**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**LUIS ARMANDO MEJIAS MARTINEZ,**

      Petitioner,

v.                                                                   Civil Action No. **3:25CV1021 (RCY)**

**TODD M. LYONS,** *et al.*,

      Respondents.

**MEMORANDUM OPINION**

On December 16, 2025, Luis Armando Mejias Martinez ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, alleging that he is and has been unlawfully detained since his violent arrest by Immigration and Customs Enforcement (ICE) officers on October 17, 2025. For the reasons set forth below, the Court finds that Petitioner's detention without a bond hearing violates the Immigration and Nationality Act (INA), and so the Court will order Respondents to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge, in accordance with his statutory rights.

**I. PROCEDURAL HISTORY**

Counsel for Petitioner filed the initiating Petition in this case on December 16, 2025. ECF No. 1. This Court thereafter determined that the Petition was not signed by the Petitioner, as required by Rule 2 of the Rules Governing Section 2254[1] Cases, and ordered Petitioner to submit a properly compliant petition before service would be made on Respondents. ECF No. 5. On December 23, 2025, Petitioner submitted a signed Amended Petition, ECF No. 6, and the Court accordingly ordered Respondents to submit a response. On February 4, 2026, Respondents filed

---

[1] Rule 1(b) of the Rules Governing § 2254 Cases permits this Court to apply the Rules Governing § 2254 Cases to petitions under 28 U.S.C. § 2241. Rule 1(b), Rules Governing § 2254 Cases; *see Aguayo v. Harvey*, 476 F.3d 971, 976 (D.C. Cir. 2007).

their Opposition to the Petition, ECF No. 9, and Petitioner, after obtaining leave of Court, filed a Reply on February 20, 2026, ECF No. 12.  On March 13, 2026, Petitioner filed a Notice of Supplemental Authority, ECF No. 13, and on March 30, 2026, a Motion to Expedite Ruling under 28 U.S.C. § 2243,[2] ECF No. 14.  Respondents did not respond to either filing.

## II.  BACKGROUND

Petitioner, a native and citizen of Venezuela, entered the United States using the CBP One Application on December 23, 2022.  Am. Pet. ¶ 2; Pet. Ex. 2, ECF No. 1-4.  He presented himself at a port of entry, was inspected, and was issued a Notice to Appear (NTA), the first step in removal proceedings in immigration court.  *Id.* ¶¶ 2, 22.  Customs and Border Protection (CBP) released Petitioner on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5) and 8 C.F.R. § 212.5 that same day.  *Id.* ¶ 22.  Notwithstanding the fact that Petitioner's parole was set to expire on December 22, 2023, *see* Pet. Ex. 2, Petitioner's NTA set an initial hearing date before an immigration judge for June 6, 2024, *see* Pet. Ex. 1, ECF No. 1-3.  Petitioner attended that hearing,[3] Am. Pet. ¶ 24, but it was adjourned for Petitioner to seek counsel, Opp'n Ex. 1 ("Byrne Decl.") ¶ 9, ECF No. 9-1.  Respondents do not attest to any further action by the government until Petitioner was "encountered" and arrested in October of 2025,[4] after agents "confirm[ed] Petitioner's identity, nationality, and removability."  Byrne Decl. ¶ 10.

---

[2] The Court already engaged with Petitioner's request for expedited handling under § 2243 in its Order issued on January 5, 2026, ECF No. 8, and the prudential considerations and applicable Rules remained unchanged between the issuance of that Order and the filing of Petitioner's Motion for Expedited Ruling.  While the Court regrets that it could not turn to Petitioner's case sooner, such are the constraints of the judicial economy at the present time.

[3] The Petition represents that Petitioner attended the Master Calendar Hearing scheduled for June 6, 2026, Am. Pet. ¶ 24, but Respondents' Exhibit 1, a supporting Declaration from Assistant Field Office Director Charles M. Byrne, states that Petitioner's hearing occurred on June 27, 2024, *see* Opp'n Ex. 1 at ¶ 9, ECF No. 9-1.  The Court finds this conflict of dates immaterial, as there is no dispute that Petitioner appeared in good faith for his scheduled initial removal hearing.

[4] The Byrne Declaration attests that Petition was encountered and taken into civil immigration all on October 20, 2025.  Byrne Decl. ¶ 10.  Petitioner's statement of facts and attached hospital admission records challenge this narrative, however.  Specifically, Petitioner recounts that he was violently seized by ICE agents on October 17, whereafter he awoke handcuffed to a hospital bed, and he remained hospitalized until October 20, 2025, at which time he was transferred to immigration detention at the Caroline Detention Center.  Am. Pet. ¶¶ 28–33; Pet. Ex. 3, ECF

Since his initial release on parole, Petitioner settled in Washington, D.C., with his family, has stayed in contact with the authorities, and has kept the government aware of his change of address. Am. Pet. ¶¶ 23–24. Petitioner applied for Temporary Protected Status (TPS)[5] with respect to Venezuela[6] on January 18, 2025, and, in connection with that application, sought a work permit and attended a biometrics appointment. *Id.* ¶ 25. Petitioner is named as a derivative beneficiary of his wife's asylum application, which was filed on August 4, 2025. *Id.* Petitioner has no criminal history other than twice being charged with traffic violations for driving without a license. *Id.* ¶ 26. He has two children, ages four and nine, and he works to support his family by delivering food. *Id.* ¶ 27.

### III. STANDARD OF REVIEW

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." *Id.* "A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (cleaned up). After receiving the petition and any

---

No. 1-5; Reply 1. In light of Exhibit 3 to the Petition (Petitioner's hospital discharge papers, showing an admittance date of October 17, 2025), the Court accepts Petitioner's narrative as controlling.

[5] As stated on the U.S. Citizenship & Immigration Services (USCIS) website,

The Secretary of Homeland Security may designate a foreign country for TPS due to conditions in the country that temporarily prevent the country's nationals from returning safely, or in certain circumstances, where the country is unable to handle the return of its nationals adequately. USCIS may grant TPS to eligible nationals of certain countries (or parts of countries), who are already in the United States. . . . During a designated period, individuals who are TPS beneficiaries or who are found preliminarily eligible for TPS upon initial review of their cases (prima facie eligible) [] [a]re not removable from the United States . . . .

*What is TPS*, USCIS, https://www.uscis.gov/humanitarian/temporary-protected-status [https://perma.cc/NYZ6-GVDF] (last visited May 4, 2026).

[6] Effective November 7, 2025, the U.S. Department of Homeland Security terminated Venezuela's TPS designation. *See id.*

response thereto, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

## IV.  DISCUSSION

Petitioner asserts five Counts in his Petition for habeas relief:

Count One     Violation of the Fifth Amendment Right to Due Process:  Procedural Due Process, based on the arbitrary revocation of Petitioner's parole-release without an individualized custody determination.  Am. Pet. ¶¶ 65–68.

Count Two     Violation of the Fifth Amendment Right to Due Process:  Substantive Due Process, based on Petitioner's deprivation of liberty without a bond hearing or other showing that his mandatory detention without such hearing is reasonably related to the government's goals of ensuring the appearance of noncitizens at future proceedings and preventing danger to the community. *Id.* ¶¶ 69–71.

Count Three   Violation of the INA, 8 U.S.C. § 1226(a), Right to a Pre-Deprivation Hearing, based on the fact that Petitioner was not "seeking admission" at the time he was seized and taken into custody by ICE.  *Id.* ¶¶ 72–76.

Count Four    Violation of the Administrative Procedures Act (APA), 5 U.S.C. § 706(2)(A), insofar as Respondents have abused their discretion by acting in an arbitrary and capricious manner when they revoked Petitioner's parole-release without a material change in circumstances or individualized determination with respect to the relevant release considerations (flight risk, danger to the community).  *Id.* ¶¶ 77–84.

Count Five    Violation of the APA, 5 U.S.C. § 706(2)(A), insofar as the revocation of Petitioner's parole-release was carried out in a manner that was not in accordance with the law and in excess of statutory authority, because Petitioner's revocation was the product of a categorical policy designed by "unidentified government officials in Washington, D.C.," not the statutorily authorized agency actors.  *Id.* ¶¶ 85–90.

Because the record is lacking in material aspects with respect to Counts One, Two, Four, and Five,[7] but the Court is equipped to grant relief based on Count Three, the Court will only engage with Petitioner's arguments predicated on the INA at this juncture.

---

[7] Specifically, the Court lacks Petitioner's original parole documentation, setting out the terms and conditions of his parole and the specific purpose thereof, which would carry implications for the processes by which parole may be terminated, revoked, renewed, or extended. *E.g.*, *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *7–9 (E.D. Va. Apr. 8, 2026).  The Court also lacks information concerning the relevant decisionmakers involved in the government's present detention policies as those relate to Petitioner's circumstances,

### A. Detention Under 8 U.S.C. §§ 1225 and 1226

This Court and others have analyzed §§ 1225 and 1226 of the INA repeatedly in recent months. Absent controlling guidance from either the United States Supreme Court or the Fourth Circuit Court of Appeals,[8] courts in this District have largely coalesced around the consensus that, based on historical application, 8 U.S.C. § 1225(b) and its mandatory detention provisions apply to noncitizens stopped at or near the border who have yet to establish a "presence" in the United States, while 8 U.S.C. § 1226(a) "establishes 'the default rule' for detaining and removing aliens 'already present in the United States'" and entitles such individuals to a bond hearing. *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991, at *6 (E.D. Va. Apr. 8, 2026).

The issue presented by this case is whether Petitioner—who was stopped at the border, released on parole, and thereafter established a presence in the United States, which extended beyond the stated expiration date of his parole—is subject to § 1225(b) or § 1226(a). Respondents argue that, based on Petitioner's presentation at a port of entry and subsequent release on humanitarian parole, Petitioner is an "applicant for admission" still "deemed 'as if stopped at the border,'" and therefore the mandatory detention provisions of § 1225(b) apply. Opp'n 5–9 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020)). For his part, Petitioner argues that his grant of parole does not mean that he is perpetually "seeking admission" for purposes of the INA, particularly in light of the government's failure to act after the expiration of his parole, and that the length of time Petitioner has lived in the country since the expiration of

---

and it is unwilling to render a decision based purely on Petitioner's "information and belief" regarding the parties involved.

[8] And acknowledging the circuit split represented by *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), and *Da Cunha v. Freden*, __ F.4th __, 2026 U.S. App. LEXIS 12201 (2d Cir. Apr. 28, 2026).

his parole places him outside the mandatory detention provisions of § 1225(b).  Am. Pet. ¶¶ 49–58; Reply 13–15.

## B.  Impact of Petitioner's Parole on the §§ 1225/1226 Analysis

Petitioner's status as a parolee renders direct application of much of the §§ 1225/1226 precedent from this District inapposite, as those cases have largely dealt with individuals who entered the country without presenting themselves at a port of entry and otherwise without inspection, and who were first encountered by immigration officials years after their unlawful entry.  *E.g., Hasan v. Crawford*, 800 F. Supp. 3d 641 (E.D. Va. 2025); *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564 (E.D. Va. 2025); *Ortega Miranda v. Bondi*, No. 3:25-cv-769-DJN, 2026 WL 287179 (E.D. Va. Feb. 3, 2026); *Buezo Sanchez v. Hott.*, No. 3:25-cv-787-RCY, ECF No. 27 (E.D. Va. Mar. 17, 2026); *Alvarez Munoz v. Simon*, No. 3:25-cv-897-RCY, ECF No. 18 (E.D. Va. Dec. 22, 2025).  Meanwhile, the jurists who *have* faced the issue presented here have reached a variety of conclusions.  Some have determined that § 1225(b) definitively applies to parolees.  *E.g.*, *Hasan v. Crawford*, 800 F. Supp. 3d 641 (E D. Va. 2025); *Abreu v. Crawford*, No. 1:24-cv-1782-MSN, 2025 U.S. Dist. LEXIS 4328 (E.D. Va. Jan. 8, 2025).  Others have avoided the question and found due process deficiencies with respect to the revocation of the petitioners' parole in the first instance, granting habeas relief on that ground.  *E.g.*, *Pineda-Berrios v. Lyons*, No. 1:25-cv-2332-LMB, 2026 U.S. Dist. LEXIS 29194 (E.D. Va. Feb. 11, 2026); *Hurtado-Barba v. Perry*, No. 3-26-cv-188-MHL, 2026 U.S. Dist. LEXIS 76991 (E.D. Va. Apr. 8, 2026) (same).  And at least one court has found that the "[p]etitioner's multi-year presence" in the country after the expiration of his parole "entitles him to the same constitutional rights as other noncitizens first discovered years after their entry" and thus entitles him to a bond hearing under § 1226(a).  *Carlos v. Crawford*, No. 2:26-cv-12-MSD, 2026 U.S. Dist. LEXIS 94753, at *12 (E.D. Va. Apr. 29, 2026).

6

As mentioned previously, the record in the present case is not sufficiently developed for the Court to resolve this matter based on due process grounds related to the revocation of Petitioner's parole-release, and so the undersigned cannot—without supplemental briefing that would only extend the duration of Petitioner's detention further—follow the path set in cases such as *Pineda-Berrios v. Lyons*, 2026 U.S. Dist. LEXIS 29194, and *Hurtado-Barba v. Perry*, 2026 U.S. Dist. LEXIS 76991.  Faced with the conflicting analyses presented in *Hasan v. Crawford*, 800 F. Supp. 3d 641, and *Abreu v. Crawford*, 2025 U.S. Dist. LEXIS 4328, as compared to *Carlos v. Crawford*, 2026 U.S. Dist. LEXIS 94753, the Court respectfully views Judge Davis's reasoning in *Carlos* as the most compelling and so finds that Petitioner is entitled to a bond hearing pursuant to § 1226(a).

After discussing the INA's historical application and courts' "emerging majority view" concerning §§ 1225(b) and 1226(a), Judge Davis proceeded to analyze the impact of Petitioner's parole pursuant to 8 U.S.C. § 1182(d)(5) vis-à-vis his status and rights under the INA.  Judge Davis particularly noted that, "[t]hough temporary physical presence in the United States is tolerated when humanitarian parole is granted, it comes with a key 'reservation of rights by the Government':  [t]he Government is authorized to continue to 'treat the non-citizen' on parole 'as if stopped at the border.'"  *Carlos*, 2026 U.S. Dist. LEXIS 94753, at *8–9 (quoting *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215–16 (D. Mass. 2025), which in turn quoted *Thuraissigiam*, 591 U.S. at 139) (also citing 8 U.S.C. § 1182(d)(5)(A) for its explanation that humanitarian parole 'shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").  Judge Davis acknowledged the Supreme Court's assertion that "'even those

7

paroled elsewhere in the country for years pending removal . . . are [fictively] treated for due process purposes as if stopped at the border' when the government later considers their 'rights regarding admission.'" *Id.* at *9 (alteration in *Carlos*) (quoting *Thuraissigiam*, 591 U.S. at 139 (cleaned up)).

After noting that Carlos's "current detention arguably has earmarks of both § 1225(b), because [Carlos] was previously apprehended near the border and paroled under § 1182(d)(5), and § 1226(a), because [Carlos] was 'discovered' unlawfully residing in the United States years after his temporary permission to be present expired," Judge Davis proceeded to make his case for why the facts of the case could not "be reasonably construed as a valid continuation of the 'legal fiction' that Petitioner was stopped at the border." *Id.* at *11.  Specifically, he wrote as follows:

> First, although controlling precedent clearly establishes that the legal fiction of non-presence as applicable to **admission rights** can continue for several years, *Thuraissigiam*, 591 U.S. at 139, some district courts have concluded that *Thuraissigiam* does not directly address whether this fiction extends to the right to be free from **detention** without the minimal process of a detention hearing. *See Torres v. Hermosillo*, No. 2:25cv2687, 2026 WL 145715, at *4 (W.D. Wash. Jan. 20, 2026) (explaining that the "entry fiction applied by the Supreme Court in *Thuraissigiam* applied only to noncitizens' rights regarding **admission** and that "the Supreme Court has never applied the entry fiction doctrine . . . to constitutionally justify the **detention** of a person living freely, for years, within the United States" (citations omitted)). To the extent that *Thuraissigiam* does not extend to detention procedures, this Court finds that Petitioner's multi-year presence in the United States entitles him to the same constitutional rights as other noncitizens first discovered years after their entry.  *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 113 (D. Mass. 2025) (ordering a bond hearing after observing that "to apply the entry fiction doctrine to [a petitioner that was on humanitarian parole for more than three years] is to set aside the plain meaning of the Fifth Amendment altogether"); *Strunin v. Garcia*, No. 5:26cv106, 2026 WL 958952, at *8 (S.D. Tex. Mar. 3, 2026) ("Pretending that Petitioner never entered the United States [during the years he was a parolee] not only subordinates fact to fiction, it disregards the plain meaning of the Due Process Clause, which promises its protection to every 'person' within the United States." (quoting *Torres*, 2026 WL 145715, at *4)); *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *8 (W.D. Tex. Mar. 16, 2026) ("Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border—cannot reasonably be deemed never to have been 'here.'"); *see also Zadvydas*, 533 U.S. at 693 (discussing the due process protections that

> emerge "once an alien enters the country," even if their presence is both unlawful and temporary).
>
> Second, even accepting that the "legal fiction" of non-presence recognized in *Thuraissigiam* extends to **detention** procedures as applied in Q. Li, this Court finds that such fiction ends when a petitioner has enjoyed years of **post-parole** presence. Importantly, unlike in Q. Li, where the noncitizen's parole continued until she was re-detained, Petitioner's brief two-month parole period was followed by more than two and a half years of unauthorized but actual presence.

*Id.* at *11–12 (emphases in original).  Judge Davis found compelling the explanation by another district judge facing similar circumstances, quoting as follows:

> Petitioner is not subject to the entry fiction despite his previous parole into the United States.  As this Court has repeatedly stated, Petitioner's parole expired and he continued to remain in the United States for over a year before he was detained.  As a result, Petitioner had a similar status to any other undocumented immigrant who entered the United States without inspection and without DHS having any clue as to their whereabouts.

*Id.* at *12 (quoting *Rodriguez v. Fields*, No. CV 26-117, 2026 WL 1078101, at *11 (E.D. Ky. Apr. 21, 2026)) (further citing *Escalona v. Noem*, No. 2:26cv769, 2026 WL 885025, at *1 (M.D. Fla. Apr. 1, 2026), which explained in a case where the petitioner overstayed his parole by six months that "[a]pplying § 1225(b)(2) to noncitizens years after they were paroled into the country does not comport with the policy justification for treating noncitizens [already present] in the country differently than those seeking entry").

The Court finds this logic particularly compelling given that, as in *Carlos*, Petitioner in this case was not detained in connection with the expiration and termination[9] of his parole, but rather was simply detained after ICE agents randomly "encountered" him and "confirm[ed] Petitioner's identity, nationality, and removability."  Byrne Decl. ¶ 10; *accord Carlos*, 2026 U.S. Dist. LEXIS 94753, at *13.  And so, the Court adopts Judge Davis's reasoning and likewise finds that, "like a

---

[9] And again, the record is incomplete with respect to whether Petitioner's parole was even subject to automatic termination without notice and an individualized determination with respect to removal.  *See Hurtado-Barba*, 2026 U.S. Dist. LEXIS 76991, *8–9 (describing the statutory processes for revocation and termination of humanitarian parole).

9

noncitizen who unlawfully enters the United States and is present for years prior to being detected, here, after Petitioner's short-term parole ended, Petitioner established a multi-year presence prior to being 'rediscovered.'" *Carlos*, 2026 U.S. Dist. LEXIS 94753, at *13–14; *accord Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 307 (E.D.N.Y. 2025) ("[I]t would be illogical to find that [the petitioner] is still in the process of 'arriving' in the United States when she has been continuously residing in the United States for more than three years after the expiration of her humanitarian parole."). "Precedent thus supports the finding that Petitioner's multi-year unapproved presence affords him some basic procedural due process rights, which here take the form of a full and fair hearing under § 1226(a) to determine the propriety of his continued detention." *Carlos*, 2026 U.S. Dist. LEXIS 94753, at *14 (citing *Zadvydas*, 533 U.S. at 693).

## V.  CONCLUSION

For the reasons set forth above, Petitioner's § 2241 Petition will be granted with respect to Count Three.  The Court will order Respondents to provide Petitioner with a standard § 1226(a) bond hearing before an Immigration Judge.

An appropriate Order will issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Date:  May 7, 2026
Richmond, Virginia

10